UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| JASON J. CHISMAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 2:04-cv-239-RLY-WGH |
| | ) | |
| SHERIFF OF RANDOLPH COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Pending Motions**

**I.**

Jason Chismar ("Chismar"), an Indiana prisoner, alleges in this civil rights action that he was confined for a period of time in the Randolph County Jail ("Jail") and that while so confined his federally secured rights were violated. He seeks damages. The defendant is the Sheriff of Randolph County, Sheriff Jay Harris ("Sheriff Harris").

Chismar seeks resolution of one of his claims, the denial of access to the courts, through the entry of partial summary judgment. The Sheriff opposes Chismar's motion for partial summary judgment and seeks summary judgment as to all of Chismar's claims.

"Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (quoting Rule 56(c) of the Federal Rules of Civil Procedure). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

> In evaluating whether a genuine issue of material fact exists, all evidence and inferences must be viewed in the light most favorable to the non-moving party. However, the non-moving party must set forth specific facts, more than mere conclusions and allegations, sufficient to raise a genuine issue for trial; the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.

*Scott v. Edinburg,* 346 F.3d 752, 755 (7th Cir. 2003) (internal citations and quotations omitted). Summary judgment is thus mandated, after adequate time for discovery, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Because the defendant seeks the entry of summary judgment and because Chismar is proceeding without counsel, the notice required by *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982) and Local Rule 56.1 was issued. Through this notice, Chismar was notified of the nature of the defendant's motion, of the proper manner in which to respond, and of the consequences of failing to respond. Chismar has responded with argument and a discussion of his claims.

## II. Findings of Fact and Conclusions of Law

### A. Findings of Fact

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(e), the court makes the following findings of fact:

Chismar was held in the Jail for less than six days, being booked into the Jail on September 2, 2004 at approximately 3:00 p.m. and being booked out for return to prison on September 8, 2004 at approximately 8:00 a.m. On September 2, 2004, Chismar was transported from the Wabash Valley Correctional Facility to the Jail for a hearing or pretrial conference in a civil case Chismar had pending in the Randolph Superior Court.

During the course of being booked into the Jail, Chismar's property was taken from him. The list of property taken includes seven law books. Chismar maintains that he also brought a copy of the Koran, a prayer rug, prayer beads, and a kufi with him in a bag that contained his toiletry items. While the property list includes the toiletry items, no mention is made of the Koran, prayer rug, prayer beads, or kufi. When Chismar was released he signed a form acknowledging that he had received all of his property, the list of which also includes no reference to the Koran, prayer rug, prayer beads or kufi.

Chismar was assigned to a cell block in which inmates are permitted to smoke if they choose. The Jail does have non-smoking cell blocks and assignment there is available upon request if a bed is open. Chismar did not request to be assigned to a non-smoking cell block because he did not know they were available. Chismar has no respiratory problems or any known medical condition which requires a smoke-free environment. Chismar himself smoked between 1995 and 1996. He also was around smokers while incarcerated between 1996 and 1997, as well as during his previous incarcerations in the Department of Correction.

At some point in time while at the Jail, Chismar requested his law books from his inmate property. The request was refused due to a longstanding policy that prohibits all books which did not come to the Jail directly from a publisher or retailer. This policy prohibits such books being brought into the Jail even if from other correctional facilities. Books brought into the Jail by an inmate are placed in his personal property and returned to the inmate when he leaves the Jail. The purpose of the policy is to prevent drugs, weapons or other contraband from being smuggled into the Jail inside books. The policy was adopted several years ago when an inmate brought his own Bible into the Jail from another correctional facility. The Bible had razor blades concealed in the binding. Even though officers had heard rumors of the razor blades and had unsuccessfully examined the Bible several times, the razor blades were not found until the inmate surrendered them when staff threatened to have the Bible x-rayed.

The Jail's library contains a Burns Annotated Indiana Code and court rules, and, if requested, arrangements can be made to obtain other legal materials from the county law library. The Jail's library also contains a copy of the Koran and additional copies are available to inmates upon request. Chismar did not request a copy of the Koran from the Jail's library.

Chismar states that he is a Muslim. His book-in form lists "no professed religion" under the topic of religion. Pork was served twice during his stay at the Jail, once during supper on September 5, 2004, and again at supper on September 6, 2004. Chismar refused to eat the remaining food on the tray due to the way it was delivered.

Chismar was on two prescription medications while at the Jail, Prolixin (Fluphenazine), an anti-psychotic medication, and Artane, for the side effects caused by Prolixin. The medication administration records at the Jail indicate that Chismar refused the Prolixin throughout his stay there. He received the Artane (for the side effects of the Prolixin he refused) twice per day until the evening of September 7, 2004, when the prescription ran out. Chismar was aware that the prescription was running out and asked to have it refilled. He was advised that he needed to sign up to see the Jail doctor. Chismar needed to see the Jail doctor to approve the refill of his prescription because the local pharmacy refused to refill prescriptions unless they came from a local doctor. Chismar received his medication upon his return to the Wabash Valley Correctional Facility on September 8, 2004.

The Jail has a grievance procedure. The Jail requires written grievances on forms provided to the inmates. Grievances concerning minor problems are to be handled by Jail staff. If the inmate is not satisfied he can present a grievance to the Jail Commander. If the inmate is still not satisfied with the response, he can file a third grievance with the Sheriff. Copies of rules pertaining to inmates, including the grievance procedure, are posted in the cell block.

On September 3, 2004, Chismar submitted a "request for services" form requesting access to his law books. Chismar submitted two grievance forms dated August 5, 2004,

however, he was not brought to the Jail until September 2, 2004, and presumably the grievances were both submitted on Sunday, September 5, 2004. Both grievances were addressed "To Whom it May Concern." One grievance complained that Chismar's diet requirements were not being met in the areas of a pork-free diet and the amount of food. The other grievance complained that he was denied access to his law books. Monday, September 6, was Labor Day and Jail Commander Doug Lankford returned to the Jail on September 7. On that date he responded to the request for services and the grievance concerning Chismar's law books by stating that Chismar would not be permitted to bring his personal books into the Jail and offering the law books of the Jail for any need he might have. He also responded to the grievance concerning the diet by thanking Chismar for the information and because the Jail provides a pork-free diet for religious reasons, he forwarded a copy of the grievance to the kitchen staff.

On September 7, 2004, Chismar submitted a grievance concerning refilling his medications before they ran out. This grievance was not directed to anyone in particular. The Jail Commander responded on September 8, 2004, advising Chismar that he needed to see the Jail doctor to get his prescription refilled. Chismar's inmate packet at the Jail contains no other grievances on any other subject. There are no documents in the packet involving grievances or appeals to Sheriff Harris.

Chismar had a number of civil and post-conviction cases pending in other county courts. In a case in Madison County, all of Chismar's petitions had been dismissed or denied months before his stay at the Jail. He filed a voluntary dismissal of his civil case in Vermillion County two days prior to being transported to the Jail. He also voluntarily dismissed a civil case in Delaware County in November 2004. That same month, Chismar voluntarily dismissed a civil case in Randolph County. Chismar filed a motion to voluntarily dismiss his petition for post-conviction relief in Vigo County on December 15, 2004, and that motion was granted on January 4, 2005. At the time the motions for summary judgment were briefed, Chismar's petitions for post-conviction relief were still pending in Marion and Madison County.

Sheriff Harris had no communication, written or oral, with Chismar during Chismar's confinement at the Jail. Sheriff Harris did not even know that Chismar was in the Jail in September 2004.

### B. Conclusions of Law

*1. Exhaustion of Administrative Remedies*

Pursuant to the Prison Litigation Reform Act, a prisoner must exhaust his administrative remedies before bringing a suit concerning prison conditions under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir.

2002)). "Failure to [follow state rules about the time and content of grievances] means failure to use (and thus to exhaust) available remedies." *Riccardo v. Rausch,* 375 F.3d 521, 524 (7th Cir. 2004).

It is undisputed that Chismar filed grievances relating to the claims he asserts herein, with the exception of his claims that he was denied his religious items (his Koran, prayer rug, and kufi), and was exposed to second-hand smoke. Chismar did not file a grievance as to those two claims. Chismar did not pursue any of his grievances through the third and final step of the process.

Chismar argues that he was not made aware of any requirement to appeal his grievances to Sheriff Harris. He correctly points out that the grievance forms themselves do not inform inmates of the opportunity or requirement to appeal to another level. In addition, the grievance policy does not state that all grievances *must* be appealed to the Sheriff. Rather, it states that "[i]f an inmate feels the grievance is not handled properly by the Jail Commander, an additional grievance can be filed addressed to the Sheriff." A question of fact exists as to whether Chismar exhausted his *available* administrative remedies as to the claims for which he filed grievances, and therefore, Sheriff Harris is not entitled to summary judgment as to the exhaustion of administrative remedies defense as to those claims. Accordingly, the court shall consider those claims on the merits. Because Chismar filed no grievance as to his claims that he was denied certain religious items or was unlawfully exposed to second-hand smoke, Sheriff Harris is entitled to summary judgment as to those claims, and they will not be addressed further in this Entry.

2.    *Individual Capacity Claims*

Chismar alleges that Sheriff Harris is liable for the actions of his employees at the Jail. This is not true, as Sheriff Harris cannot be found liable for 42 U.S.C. § 1983 claims by virtue of his role as Sheriff pursuant to the doctrine of *respondeat superior. Steidl v. Gramley,* 151 F.3d 739 (7th Cir. 1998). *See also Antonelli v. Sheahan,* 81 F.3d 1422, 1428 (7th Cir. 1996) ("A prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior*; the official must actually have participated in the constitutional wrongdoing.") (internal quotations omitted). There is no evidence that Sheriff Harris was aware that Chismar was Muslim, wanted a pork-free diet, that he needed a refill of medication, or that he wanted to use his own legal books. Sheriff Harris had no contact nor communication with Chismar during his stay at the Jail. Sheriff Harris is entitled to summary judgment as to any claim asserted against him in his individual capacity because he did not have sufficient personal responsibility for any alleged misconduct of Jail staff nor did it occur at his direction.

3.    *Denial of Access*

Chismar alleges that Sheriff Harris denied Chismar access to the courts while he was confined at the Jail, in violation of his First Amendment rights. Chismar claims that, as the result of the inability to have access to his law books during his stay in the Jail many

5

or most of the cases he had pending were dismissed. He alleges that the Jail's legal materials were inadequate. The court construes this claim as asserted against Sheriff Harris in his official capacity because Chismar challenges the Jail policy that prohibited him from bringing his own legal books into the Jail.[1]

An inmate alleging denial of access to the courts lacks even the standing to assert such a claim in the absence of actual injury, which means an adverse decision in, or inability to litigate, some concrete legal claim. *Lewis v. Casey,* 518 U.S. 343, 351-57 (1996); *Martin v. Davies,* 917 F.2d 336, 340 (7th Cir. 1990) (giving as examples of prejudice "court dates missed" and "inability to make timely filings"). The undisputed record shows that Chismar was not denied access to the Jail law library. If the library did not have specific books that Chismar required, he could have requested that materials be brought from the local county law library.  More importantly, Chismar has not submitted any evidence showing that by virtue of his personal law books being withheld from him for six days he suffered any adverse decision in or inability to litigate any legal claim.  None of his other cases were dismissed for missing deadlines or for failure to appear at a hearing.  At least two cases were dismissed even before Chismar was transported to the Jail.

In the motion to dismiss filed on November 15, 2004, in his civil case in Randolph Superior Court, Chismar asserted that he had been denied access to legal materials at the Jail and had experienced continued inability to research legal matters related to the case, making it impossible for him to proceed further.  He asserted that he could not be prepared for the December 20, 2004, trial because he was not allowed to file proper motions and requests for orders while evidence was available.  There is no evidence, other than the self-serving text of the motion to dismiss, that Chismar was prevented from litigating his civil case in Randolph County.  This is the case for which Chismar was brought to the Jail for a pretrial conference held on September 3, 2004.  On that date, the parties were ordered to submit witness and exhibit lists no later than November 15, 2004, and the discovery deadline was set for November 1, 2004. The docket indicates that Chismar did serve discovery requests and filed other requests in the case.  No reasonable trier of fact could find that any lack of legal materials for six days in September 2004 had any bearing on Chismar's ability to litigate this or any other case.  Sheriff Harris in his official capacity is entitled to summary judgment as to Chismar's denial of access claim.

---

[1] Chismar's official capacity claims against Sheriff Harris are in all respects except for name against the Office of the Sheriff of Randolph County. Sheriff Harris in his official capacity can be found liable under 42 U.S.C. § 1983 only if action pursuant to an official policy or custom of the Sheriff's Department causes a constitutional tort. *See Monell v. Dept. of Social Services,* 436 U.S. 658, 690-91 (1978); *DeGenova v. Sheriff of DuPage County*, 209 F.3d 973, 977 n.2 (7th Cir. 2000)*; Weatherholt v. Spencer County*, 639 N.E.2d 354, 357 n.2 (Ind.Ct.App. 1994).

*4.  Denial of Medication*

Chismar alleges that he was denied medical treatment when his prescription medication ran out. At the time of Chismar's confinement in the Jail, he was a convicted offender. Accordingly, as to his treatment at the Jail and the conditions of his confinement, the Eighth Amendment's proscription against the imposition of cruel and unusual punishment is the applicable constitutional provision. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). The Eighth Amendment requires a level of culpability higher than negligence. It requires deliberate indifference. *See Farmer v. Brennan,* 511 U.S. 825, 835 (1994) ("[D]eliberate indifference describes a state of mind more blameworthy than negligence"). "State officials are deliberately indifferent if they 'know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.'" *Dunigan v. Winnebago County,* 165 F.3d 587, 591 (7th Cir. 1999) (quoting *Farmer*, 511 U.S. at 837*).*

When Chismar requested a refill of his medication, he was informed that he needed to see the Jail doctor because the local pharmacy would not refill prescriptions that did not come from a local physician. To the extent this procedure can be attributed to the Jail as a "policy," Chismar has not shown that its application resulted in deliberate indifference to his serious medical needs. A refill of medication was not refused. Chismar was informed of the procedure, rather than having his request sent to the pharmacy and rejected. Rather than request to see the Jail physician, Chismar filed a grievance. The response to the grievance was to inform Chismar that he needed to see the Jail doctor to get a refill. Chismar's medication ran out on September 7 and he received the medication the next day when he returned to the Wabash Valley Correctional Facility. In addition, Chismar has not presented any evidence that he was injured from missing his medication for one day. He has failed to show that a genuine issue of material fact exists as to whether Sheriff Harris or anyone else at the Jail was deliberately indifferent to his serious medical needs. The Sheriff is entitled to summary judgment in his official capacity as to the claim of denial of medical treatment.

*5.  Free Exercise of Religion*

Chismar alleges that he was denied his right to exercise religious freedom, in violation of the First Amendment. Specifically, Chismar alleges that he requested but was denied a pork-free diet during his stay at the Jail.

It is not disputed that Chismar has a limited right to freely exercise his religious beliefs. The court assumes for purposes of this motion that Chismar is of the Muslim religion and that he requires a "no pork" diet. "[A] prisoner is entitled to practice his religion insofar as doing so does not unduly burden the administration of the prison. But, conversely, a prison is entitled to enforce its regulations, even if they crimp a prisoner's

7

religious style, if the regulations are reasonably related to legitimate penological objectives." *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990) (internal citation and quotation omitted). "A prisoner's right to freely exercise his religious beliefs does not depend upon his ability to pursue each and every aspect of the practice of his religion." *Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996). The record shows that on September 5, 2004, Chismar submitted a grievance complaining that he was Muslim and had provided Jail staff with documentation of his need for a pork-free, 3800 calorie diet, and that he had not received such diet. Chismar was served pork at two meals during his stay at the Jail.

Chismar does not allege that the Jail had a policy which caused a violation of his constitutional rights. Specifically, Chismar has not shown that the Jail instituted a policy or custom of refusing to provide him or other inmates with a "no pork" diet. On two occasions Chismar was served pork. "De minimus burdens on the free exercise of religion are not of constitutional dimension." *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999). Such isolated instances of oversight or failure to communicate Chismar's request for a pork-free diet to the kitchen staff do not rise to the level of a constitutional violation. Accordingly, Sheriff Harris in his official capacity is entitled to summary judgment as to this claim.

### III. Conclusion

"[S]ummary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 523 U.S. 574, 600 (1998).

Chismar has not shown that a genuine issue exists for trial as to any of his claims against Sheriff Harris in his individual or his official capacity. For the reasons discussed in this Entry, Sheriff Harris is entitled to judgment as a matter of law. Accordingly, the motion for partial summary judgment filed by Chismar on March 31, 2005, is **denied** and the cross-motion for summary judgment filed by Sheriff Harris on May 20, 2005, as to all claims, is **granted.** Any other pending motions are **denied** as moot. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Date: October 12, 2005